UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ANDRE PAZIK,

                Plaintiff,

      v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

**DECISION AND ORDER**

1:19-CV-00943 EAW

## <u>INTRODUCTION</u>

Represented by counsel, plaintiff Andre Pazik ("Plaintiff") brings this action pursuant to Title II of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying his application for disability insurance benefits ("DIB"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g).

Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 8; Dkt. 14), and Plaintiff's reply (Dkt. 16). For the reasons discussed below, the Commissioner's motion (Dkt. 14) is granted and Plaintiff's motion (Dkt. 8) is denied.

**BACKGROUND**

Plaintiff protectively filed his application for DIB on April 11, 2016. (Dkt. 6 at 14, 72).[1]  In his application, Plaintiff alleged disability beginning August 21, 2014, due to the following impairments: stage 3 kidney disease; chronic anemia; arthritis; venous insufficiency; and hypertension. (*Id.* at 159, 163).  Plaintiff's application was initially denied on June 20, 2016. (*Id.* at 83-88).  At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") Timothy M. McGuan, in Buffalo, New York on September 11, 2018. (*Id.* at 34-65).  On October 25, 2018, the ALJ issued an unfavorable decision. (*Id.* at 11-28).  Plaintiff requested Appeals Council review; his request was denied July 16, 2019, making the ALJ's determination the Commissioner's final decision. (*Id.* at 5-10).  This action followed.

**LEGAL STANDARD**

**I.     District Court Review**

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g).  The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g).  "Substantial evidence means more

---

[1]     When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted).  It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).  However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.    <u>Disability Determination</u>

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act.  *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986).  At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity.  *See* 20 C.F.R. § 404.1520(b).  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities.  *Id*. § 404.1520(c).  If the claimant does not have a severe impairment or

combination of impairments, the analysis concludes with a finding of "not disabled."  If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings").  *Id*. § 404.1520(d).  If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (*id*. § 404.1509), the claimant is disabled.  If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments.  *See id*. § 404.1520(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work.  *Id*. § 404.1520(f).  If the claimant can perform such requirements, then he or she is not disabled.  If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled.  *Id*. § 404.1520(g).  To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience.  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 404.1560(c).

**DISCUSSION**

I.      **The ALJ's Decision**

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 404.1520. Initially, the ALJ determined that Plaintiff last met the insured status requirements of the Act on March 31, 2015. (Dkt. 6 at 16). At step one, the ALJ determined that Plaintiff did not engage in substantial gainful work activity from the alleged onset date of August 21, 2014, through the date last insured. (*Id.*).

At step two, the ALJ found that, through the date last insured, Plaintiff did not have an impairment or combination of impairments that significantly limited his ability to perform basic work-related activities for 12 consecutive months. (*Id.* at 16). The ALJ accordingly concluded that Plaintiff was not disabled as defined in the Act at any time from August 21, 2014, the alleged onset date, through March 31, 2015, the date last insured. (*Id.* at 19).

The ALJ then made several alternative findings, assuming for the sake of argument that Plaintiff's medically determinable impairments were severe. (*Id.*). In the alternative, at step three, the ALJ found that, through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.*). The ALJ particularly considered the criteria of Listings 1.02, 6.05, 6.09, and 8.04 in reaching this determination. (*Id.* at 19-20).

Before proceeding to step four, the ALJ determined that, through the date last insured, Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), with the following additional limitations:

> [He] can frequently finger and handle with the bilateral hands; can occasionally do postural activities as defined in the Regulations; and can never climb ropes, ladders or scaffolds.

(*Id.* at 20). At step four, the ALJ relied on the testimony of a vocational expert ("VE") to find in the alternative that Plaintiff was capable of performing his past relevant work as a winemaker through the date last insured. (*Id.* at 23).

## II.   The Commissioner's Determination is Supported by Substantial Evidence and Free from Reversible Error

Plaintiff asks the Court to remand this matter to the Commissioner, arguing that: (1) the ALJ's step two finding that Plaintiff did not have an impairment or combination of impairments that had significantly limited his ability to perform basic work-related activities for 12 consecutive months was not supported by substantial evidence; and (2) the ALJ's alternative step four finding that Plaintiff was capable of performing his past relevant work as a winemaker was not supported by substantial evidence. (*See* Dkt. 8-1). The Court has considered these arguments and, for the reasons discussed below, finds them to be without merit.

### A.   Step Two Finding

At step two of the disability analysis, the ALJ determines whether the claimant has a medically determinable impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 404.1520(c). A medically determinable

impairment is one that  "result[s] from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques."  20 C.F.R. § 404.1521.  "The plaintiff bears the burden of establishing that he has a medically determinable impairment, which 'can be shown by medically acceptable clinical and laboratory diagnostic techniques[ ]' from an 'acceptable medical source.'" *Lorusso v. Saul*, No. 3:19 CV 126 (RMS), 2020 WL 813595, at *9 (D. Conn. Feb. 19, 2020).

Assuming that a claimant demonstrates the existence of a medically determinable impairment, he then "bears the burden of presenting evidence establishing severity." *Taylor v. Astrue*, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012), *adopted*, 32 F. Supp. 3d 253 (N.D.N.Y. 2012).  Step two's "severity" requirement is *de minimis* and is meant only to screen out the weakest of claims.  *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995). However, despite this lenient standard, the "'mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment' is not, by itself, sufficient to render a condition 'severe.'"  *Taylor*, 32 F. Supp. 3d at 265 (quoting *Coleman v. Shalala*, 895 F. Supp. 50, 53 (S.D.N.Y. 1995)).  Rather, "to be considered severe, an impairment or combination of impairments must cause 'more than minimal limitations in [a claimant's] ability to perform work-related functions.'"  *Windom v. Berryhill*, No. 6:17-cv-06720-MAT, 2018 WL 4960491, at *3 (W.D.N.Y. Oct. 14, 2018)

(alteration in original) (quoting *Donahue v. Colvin*, No. 6:17-CV-06838(MAT), 2018 WL 2354986, at *5 (W.D.N.Y. May 24, 2018)).

Further, "to be deemed severe at step two, an impairment must significantly limit the ability to perform basic work activities for the durational requirement of at least twelve months." *Hall v. Comm'r of Soc. Sec.*, No. 19-CV-542S, 2020 WL 2950840, at *3 (W.D.N.Y. June 3, 2020) (citing 20 C.F.R. § 404.1509)).  In other words, "[s]tep two addresses two distinct questions. First, an ALJ must determine whether an impairment satisfies the durational requirement. . . .  Second, an ALJ must determine whether an impairment limits a claimant's ability to do basic work activities." *Thomas v. Berryhill*, No. 15-CV-012 (MAT), 2017 WL 4053819, at *4 (W.D.N.Y. Sept. 13, 2017) (citation omitted).

Plaintiff has identified the following purported errors in the ALJ's step two analysis: (1) the ALJ misstated the record in concluding that Plaintiff's kidney disease was not a medically determinable impairment prior to the date last insured; (2) the ALJ misstated the record with respect to Plaintiff's respiratory symptoms; (3) the ALJ misstated the record with respect to Plaintiff's anemia; (4) the ALJ misstated the record with respect to Plaintiff's edema; and (5) the ALJ's conclusion that Plaintiff did not exhibit significant or continued complaints of knee pain was unsupported by the evidence of record.

At step two, the ALJ found the following with respect to Plaintiff's kidney disease:

[Plaintiff] has also been diagnosed with kidney disease, but this condition was not diagnosed until May 2015, and the record documents no related symptom complaints or treatment prior to March 31, 2015.  In fact, in May 2015, [Plaintiff] stated that he had only been experiencing symptoms for three weeks prior, a time period still after his date last insured.  Therefore, I

> find that this condition was not a medically determinable impairment[] through the date last insured.

(Dkt. 6 at 18).   Plaintiff contends that this finding was erroneous because Plaintiff "experienced symptoms consistent with kidney disease—shortness of breath, edema, anemia, and joint pain prior to March 31, 2015."   (Dkt. 8-1 at 16).   However, having reviewed the record, the Court concludes that substantial evidence supports the ALJ's conclusion.

Plaintiff concedes that he was not diagnosed with kidney disease until after his date last insured.   (*See* Dkt. 16 at 2); *see also Banyai v. Berryhill*, 767 F. App'x 176, 178 (2d Cir. 2019) ("To be entitled to disability insurance benefits, claimants must demonstrate that they became disabled while they met the Act's insured status requirements.").   He nonetheless argues that the symptoms of his kidney disease manifested prior to March 2015.   However, Plaintiff has not pointed to evidence in the record supporting the conclusion that his shortness of breath, edema, and joint pain were caused by his kidney disease.   Plaintiff does attempt to tie his anemia to his kidney disease, arguing that in mid-2015, "physicians at Kenmore Mercy Hospital speculated that [Plaintiff's] anemia was secondary to his kidney disease. . . ."   (Dkt. 16 at 2).   But speculation is not medical evidence, and the presence of a medically determinable impairment must be shown by "medically acceptable clinical and laboratory diagnostic techniques."   20 C.F.R. § 404.1521; *see Ortiz v. Comm'r of Soc. Sec.*, No. 15 CIV. 3966 (BMC), 2016 WL 3264162, at *6 (E.D.N.Y. June 14, 2016) (speculation by physician that the plaintiff's vascular headaches were caused by a longstanding brain infection did provide support for conclusion that the plaintiff was disabled prior to the date last insured).   Moreover,

- 9 -

Plaintiff's medical records also describe his kidney disease as "acute renal failure" and "acute kidney injury."  (Dkt. 6 at 427; 674; 802; 822).  On this record, the Court cannot find that the ALJ erred in concluding that Plaintiff's kidney disease did not become a medically determinable impairment until after his date last insured.

Moreover, the ALJ specifically considered the symptoms that Plaintiff now claims were caused by his kidney disease and concluded that they had not individually or in combination significantly limited his ability to perform basic work-related activities for 12 consecutive months.  Turning first to Plaintiff's shortness of breath, the ALJ noted that Plaintiff "reported respiratory symptoms shortly before his date last insured and into mid-2015," but found there was no evidence those respiratory symptoms had lasted for a period of at least 12 months because "by late 2015, [Plaintiff] reported that he had no shortness of breath and . . . no respiratory symptoms, and respiratory examination of [Plaintiff] was unremarkable."  (Dkt. 6 at 18).  Plaintiff contends that the ALJ misstated the record, because he experienced shortness of breath in early 2014, he met with both a pulmonologist and a cardiologist in early 2014 due to his shortness of breath, and he was prescribed an inhaler from January 2014 through June 2015.  (Dkt. 8-1 at 16-17).

It is true that Plaintiff experienced respiratory symptoms in late 2013 and early 2014, prior to his alleged onset date.  (*See* Dkt. 6 at 459; 464-65).  Plaintiff reported experiencing a cough to his primary care physician in November 2013.  (*Id*. at 474).  In March 2014, Plaintiff reported to a cardiologist that "the colder air [was] making him cough" when exercising.  (*Id*. at 672).  The cardiologist noted that Plaintiff's respiratory symptoms could be "reactive airway disease or cold induced asthma," or that they could

have been caused by "an infection related to two sewage floods in [Plaintiff's] basement" the prior year. (*Id.*). On examination, Plaintiff's lungs were clear to auscultation bilaterally with no wheezes. (*Id.*). Plaintiff was seen on May 1, 2014, and was noted to be "doing much better" and to be "off the inhaler." (*Id.* at 585). In August and September of 2014, pulmonary examinations of Plaintiff were normal and his respirations were non-labored. (*Id.* at 240; 707; 715).

Then, in April 2015, Plaintiff reported that he was experiencing a "productive cough" with shortness of breath and weakness. (*Id.* at 312). In May 2015, Plaintiff reported to his physicians that he had "cough and hemoptysis that began about 3 weeks ago" and "exertional shortness of breath for the last few days." (*Id.* at 282). By June 19, 2015, Plaintiff's respiratory symptoms were "good," and his cough was "better controlled." (*Id.* at 674). By October 2015, Plaintiff was no longer experiencing a cough (*id.* at 660), and he continued to be free from respiratory symptoms in 2016 (*id.* at 802).

Step two's durational requirement requires that an impairment last for "a <u>continuous</u> period of at least 12 months." 20 C.F.R. § 404.1509 (emphasis added). Here, the record supports the conclusion that Plaintiff experienced two separate occurrences of respiratory symptoms, one of which resolved prior to the alleged onset date and neither of which lasted for the requisite time period. The ALJ's determination that Plaintiff's respiratory symptoms did not meet the durational requirement was thus supported by substantial evidence.

With respect to Plaintiff's anemia, the ALJ noted that Plaintiff had a history of anemia and that his hospitalizations in May 2015 and August/September 2015 "were in

part due to anemia." (Dkt. 6 at 18). The ALJ further noted that Plaintiff's anemia had stabilized within 12 months of his first hospitalization and that "the record fails to document further continued complaints related to this condition." (*Id*.). The ALJ accordingly concluded that there was "no evidence that this condition caused more than minimal work-related limitation for a period of at least 12 months" and that it was thus non-severe. (*Id*.).

Plaintiff argues that the ALJ misstated the record regarding his anemia, because he was noted to have low iron and prescribed iron supplementation in August of 2014. (Dkt. 8-1 at 17-18). Plaintiff misapprehends the nature of the ALJ's conclusion regarding his anemia. While it is true that Plaintiff's iron was low in August 2014, there is no evidence in the record that his anemia was sufficiently severe at that time to interfere with his ability to perform work-related functions. "[A] claimant's functional limitations—and not merely his diagnosis—must meet the 12-month durational requirement in order to establish disability." *Diaz-Sanchez v. Berryhill*, 295 F. Supp. 3d 302, 305 (W.D.N.Y. 2018) (citing *Barnhart v. Walton*, 535 U.S. 212, 219 (2002)). The ALJ's finding that Plaintiff's anemia did not cause functional limitations until May of 2015 and that this condition thereafter stabilized within less than 12 months is amply supported by the record. (*See, e.g.,* Dkt. 6 at 592-93 (in October 2015, Plaintiff's iron and ferritin were within the normal range and physical examination was normal)). The Court finds no error in the ALJ's assessment of Plaintiff's anemia.

Turning to Plaintiff's edema, the ALJ explained that while Plaintiff "had a leg ulcer diagnosed in August 2014 with pitting edema due to venous insufficiency," that wound

had healed without complication by December 2014. (*Id*. at 17-18). "[W]hile [Plaintiff] continued to have pitting edema" for some months thereafter, it was "noted to decrease in size and be under control." (*Id*. at 18). Plaintiff's extremities were free of edema by May 2015. (*Id*. at 282).

Plaintiff contends that the ALJ erred in discussing his edema because his treating nephrologist observed "trace pitting edema" in 2017 and 2018. (Dkt. 8-1 at 18). Again, Plaintiff's argument misapprehends the ALJ's decision and the nature of the durational requirement. There is no evidence that the trace pitting edema Plaintiff experienced in 2017 and 2018 (two years after the original episode of edema resolved and after the expiration of Plaintiff's date last insured) caused functional limitations, much less for the requisite continuous 12-month period. The ALJ did not err in his consideration of Plaintiff's edema.

Finally, the Court finds that the ALJ did not err in concluding that Plaintiff's knee pain was not a medically determinable impairment prior to the date last insured. Plaintiff argues that he reported knee pain to his primary care physician Dr. Tejinder Kalra in July 2009 and July 2013[2], and that the ALJ should have recontacted Dr. Kalra for additional information because Dr. Kalra's handwritten notes were illegible. (Dkt. 8-1 at 20-21). The Court finds this argument without merit. An ALJ is not obliged to recontact a treating physician where the record is sufficiently complete to allow him to assess a claim of disability. *See Brogan-Dawley v. Astrue*, 484 F. App'x 632, 634 (2d Cir. 2012) (explaining

---

[2]     Plaintiff also notes that he reported ankle pain in March 2013, but offers no explanation as to how this is related to his knee impairment.

that an ALJ is required to recontact only "if the records received were inadequate . . . to determine whether [Plaintiff was] disabled" (quotation omitted)).

Here, the medical evidence of record from 2014 and 2015 consistently demonstrated that Plaintiff was not suffering from a knee impairment.  For example, on March 24, 2014, a physical examination of Plaintiff revealed no musculoskeletal issues.  (Dkt. 6 at 464).  On August 21, 2014, September 3, 2014, and May 12, 2015, Plaintiff had normal range of motion and normal strength on examination.  (*Id*. at 576, 707, 715).  Plaintiff denied any musculoskeletal symptoms in October 2015.  (*Id*. at 664-65).  Given this consistent evidence from shortly before, during, and shortly after the relevant time period, the ALJ was not obliged to perform further investigation into two prior isolated references to knee pain, the first of which occurred more than five years before the alleged onset date.

For all these reasons, the Court finds the ALJ's step two determination adequately supported by the evidence of record and rejects Plaintiff's argument that remand of this matter is warranted.

**B.    Step Four Finding**

Plaintiff's only other argument is that the ALJ's alternative step four finding that Plaintiff was capable of performing his past relevant work as a winemaker was unsupported by substantial evidence.  (Dkt. 8-1).  However, because the Court finds that the ALJ correctly determined that Plaintiff was not disabled at step two, it need not reach the adequacy of the ALJ's alternative step four finding.

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 14) is granted, and Plaintiff's motion for judgment on the pleadings (Dkt. 8) is denied.  The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated:       September 14, 2020
             Rochester, New York